IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:09-CV-71-D

| | |
|---|---|
| PATRICIA BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

In this action, plaintiff challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income disability benefits ("SSI") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings (D.E. 10, 12). Both parties filed memoranda in support of their respective motions. (D.E. 11, 13). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 17). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for SSI benefits effective 18 March 2005 alleging the onset of disability on 15 August 2000.[1] Transcript of Proceedings ("Tr.") 22, 487. The application was denied initially (*id.* 22, 475) and upon reconsideration (*id.* 22, 482), and a request for hearing was

---

[1] Plaintiff filed seven prior applications for disability benefits or payments between 18 August 1992 and 28 September 2001, all of which were denied. Tr. 22. Documents from the most recent prior denial are included in the Transcript. *Id.*, *e.g.*, 457-70, 1032-68.

timely filed (*id.* 22, 486). A brief initial hearing session before an Administrative Law Judge ("ALJ") was held on 10 July 2007 (*id.* 22, 1025-31), at which plaintiff amended the disability onset date to 18 March 2005 (*id.* 22, 1027). At plaintiff's request, the remainder of the hearing (before a different ALJ) was continued to 25 October 2007. (*Id.* 22, 999-1031). All of plaintiff's testimony was presented at this supplemental hearing.

In a written decision dated 9 November 2007, the ALJ found that plaintiff was not disabled and therefore was not entitled to SSI. *Id.* 22-32. Plaintiff timely requested review by the Appeals Council on 9 November 2007. *Id.* 17. The Appeals Council received into the record correspondence from plaintiff's counsel (*id.* 14), but denied the request for review on 10 February 2008 (*id.* 11-13). At that time, the decision of the ALJ became the final decision of the Commissioner, pursuant to 20 C.F.R. § 416.1481. *See id.* 11. Plaintiff commenced this proceeding for judicial review on 9 April 2009 in accordance with 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* Compl. (D.E. 1).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

3

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

C.     **Findings of the ALJ**

Plaintiff was 37 years old on the alleged onset date of disability and 40 years old on the date of the supplemental hearing in October 2007. Tr. 31 ¶ 6. She testified that she completed the 11th grade and had attended community college to obtain a GED. *Id.* 27 ¶ 4, 1004. She also testified that she had prior work experience as a restaurant cook and cashier, motel housekeeper, personal care assistant, and certified nurse assistant. *Id.* 1005-06.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. *Id.* 24 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): a schizoaffective disorder, degenerative disc disease, fibromyalgia, and a history of carpal tunnel syndrome. *Id.* 24 ¶ 2. At step three, however, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals one of the listings. *Id.* 25 ¶ 3.

The ALJ determined that plaintiff has the RFC to perform a wide range of light, unskilled work. *Id.* 26 ¶ 4. Specifically, he found that plaintiff is able to lift and carry up to 10 pounds frequently and 20 pounds occasionally, and to stand, walk, or sit for 6 hours in an 8-hour day. *Id.* But he also found that she is limited to indoor work, only occasional social interaction, and simple,

4

routine, repetitive tasks, and that she cannot perform work requiring production goals. *Id.* 26. At step four, the ALJ found that plaintiff had no past relevant work. *Id.* 31 ¶ 5. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, such as housekeeping cleaner (*Dictionary of Occupational Titles* ("*DOT*") code 323.687-014), office helper (*DOT* code 239.567-010), and marker (*DOT* code 209.587-034). *Id.* 31-32 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. *Id.* 32 ¶ 10.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.   Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ erred by: (1) accepting the opinion of the vocational expert; (2) not explaining how he determined plaintiff's RFC; (3) not finding plaintiff's intellectual level to be a severe impairment; and (4) not considering all the appropriate listings. The court addresses each of these grounds in turn below.

### C. Acceptance of Vocational Expert's Opinion

Plaintiff contends that the ALJ erred in accepting the vocational expert's opinion that jobs are available to plaintiff because he did not include a limitation on handling or fingering in the hypothetical question he posed to the vocational expert. The court disagrees.

To be helpful, a vocational expert's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (quoted in *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (unpublished)). The vocational expert must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the hypothetical presented to the vocational expert by the ALJ adequately reflected the plaintiff's RFC as determined by the ALJ. The hypothetical posited an individual of the same age, education, and work background as plaintiff who had the exertional capacity for light work. Tr. 1002. Additionally, the hypothetical individual was limited to simple, routine, repetitive tasks; no more than occasional interaction with others; no production work; and only indoor work. *Id.* 1022-23. The hypothetical thus matched precisely the RFC that the ALJ determined plaintiff to have. *See id.* 26. As indicated, based on this hypothetical, the vocational expert testified that there were jobs that exist in significant numbers in the national and local economies that an individual with the limitations described could perform, including housekeeping cleaner, office helper, and marker. *Id.* 1023.

7

The exclusion from the RFC of a restriction on handling and fingering was a reasoned determination by the ALJ. After summarizing plaintiff's history of carpal tunnel syndrome (*id.* 29), the ALJ concluded that plaintiff "has not had any significant limitation of motion, signs of inflammation, joint deformity, or focal neurological deficits related to her orthopedic conditions" and that "she has no impairment . . . in performing fine and gross manipulative activities" (*id.* 30).

Substantial evidence supports the ALJ's determination that plaintiff lacked any limitation on her handling and fingering. The record shows that in 2000, some five years before the alleged disability onset date, plaintiff was diagnosed with mild carpal tunnel syndrome and prescribed steroids, occupational or physical therapy, and wrist splints. *Id.* 179, 181, 182, 184, 187, 281. On 21 June 2002, plaintiff was seen by orthopedist Stephen I. Lester, M.D. with complaints of carpal tunnel syndrome in both hands. *Id.* 353. He found that she has "an essentially negative clinical examination for carpal tunnel" and recommended treating her with vitamin B6. *Id.*[2]

Plaintiff then saw rheumatologist Edward L. Treadwell, M.D. on 15 June 2004. *Id.* 592-93. He found plaintiff to have some weakness in the grip strength of her left hand, rating it at +4/+5. *Id.* In a visit on 10 September 2004, Dr. Treadwell found plaintiff to have no warm or swollen joints in her hands or wrists, full range of motion, and good muscle strength at +5/+5. *Id.* 587. He continued to treat plaintiff through September 2007 and his examinations of plaintiff's upper extremities were normal (*id.* 694-714, 801-80, 893-904), although he did periodically note her history of carpal tunnel syndrome (*id.* 586, 592, 863).

---

[2] The ALJ found that Dr. Lester also prescribed treatment TENS (i.e., transcutaneous electrical nerve stimulation) (Tr. 29), and plaintiff testified to having received "electric treatment for about a week" (*id.* 1010). Dr. Lester's medical records do not clearly confirm this treatment, although they are clear that he recommended TENS for plaintiff's lumbrosacral strain syndrome. *Id.* 353.

8

The record does contain contrary findings by two state agency consultants. They found in June and August 2005, respectively, that carpal tunnel syndrome limited plaintiff to frequent, as opposed to constant, handling. *Id.* 623, 684. But the consultants who made this finding did not examine plaintiff, as her treatment providers. *See* 20 C.F.R. § 416.920(d)(1), (2) (providing that examining and treating source opinions are generally given more weight than non-examining source opinions). Moreover, the consultants did not have the benefit of the treatment records for plaintiff since 2005 substantiating a lack of a carpal tunnel-based limitation on plaintiff. The ALJ therefore acted lawfully in not accepting the consultants' finding limiting plaintiff to frequent handling.[3]

The court concludes that the hypothetical posed to the vocational expert accurately reflected the RFC as properly found by the ALJ. The ALJ therefore acted lawfully in excluding from the hypothetical any limitation on plaintiff's handling and fingering. *See Johnson*, 434 F.3d at 659.

### D. Explanation of RFC Determination

Plaintiff contends that the ALJ merely recited the medical evidence underlying his RFC determination without explaining how the evidence supported the determination. In particular, she argues that he failed to explain the absence of a limitation on her capacity for handling and fingering, and on her postural activities (*e.g.*, stooping, crawling, kneeling).

Plaintiff is correct, of course, that an ALJ cannot merely recite evidence, but must explain how it supports his RFC assessment: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

---

[3] Even if the ALJ had adopted this limitation, it would not have prevented plaintiff from performing the jobs the vocational expert identified plaintiff had the capacity to perform. According to the *DOT*, none of them requires more than frequent handling or fingering. *See DOT* defs. for Cleaner, Housekeeping (code 323.687-014 (freq. handling & occasional fingering)); Office Helper (code 239.567-010) (freq. handling & fingering); Marker (*DOT* code 209.587-034) (freq. handling & fingering).

9

findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7 (2 July 1996). But the court disagrees with plaintiff that the ALJ here failed to provide an adequate explanation of his RFC determination.

The ALJ's discussion of plaintiff's RFC spans six pages. Tr. 26-31 ¶ 4. It begins with a statement of the RFC determination that itself contains explanations regarding the limitations to indoor work and simple, routine, repetitive tasks. *Id.* 26 ¶ 4. The ALJ then provides a comprehensive summary of plaintiff's testimony, including descriptions of her activities of daily living and her allegations of functional limitations. *Id.* 27-28 ¶ 4. The ALJ next reviews systematically the medical evidence relating to each alleged impairment. *Id.* 28-30 ¶ 4. This review is not a blind recitation of the evidence, but instead highlights evidence supportive of the RFC determination already stated. After this review, the ALJ sets out his conclusions regarding the various impairments and the principal findings supporting them. *Id.* 30 ¶ 4. He also provides his assessment of plaintiff's credibility, finding her allegations of limitations not entirely credible. *Id.* Lastly, he addresses opinion evidence, stating his agreement with a treating source opinion that plaintiff should avoid exposure to the sun (*id.* 587, 899), and the opinions of the medical and psychological consultants (*see id.* 620-27, 632-45, 666-69, 670-83) and an ALJ who had adjudicated a prior claim of plaintiff (*see id.* 460-70) that she is capable of unskilled light work. *Id.* 30-31 ¶ 4.

The ALJ intersperses in his narrative at appropriate points discussion of relevant legal principles and authorities. *Id.* 26-27 ¶ 4, 29-30 ¶ 4. This main discussion of plaintiff's RFC is supplemented by discussions elsewhere of particular impairments, which help explain the exclusion of certain limitations from the RFC. *Id., e.g.*, 25 ¶ 2 (level of intellectual functioning).

Thus, the ALJ presents a thorough and detailed explanation of his RFC determination. This discussion makes clear the ALJ's rationale for his RFC determination. Plaintiff's contention to the contrary is baseless.

So too is plaintiff's contention that the ALJ failed specifically to explain his determination not to adopt a limitation on handling or fingering. As previously discussed, the ALJ does adequately explain this determination.

The ALJ also adequately explains his determination not to place postural limitations on plaintiff. While acknowledging that plaintiff has disc protrusion and herniation (*id.* 29 ¶ 4), he finds, as noted above, that plaintiff "has not had any significant limitation of motion, signs of inflammation, joint deformity, or focal neurological deficits related to hear orthopedic conditions." *Id.* 30 ¶ 4. He also, as indicated, states his general concurrence with the opinions of the medical consultants and thereby their finding that plaintiff does not to have postural limitations. *Id.* 30-31 ¶ 4, 622, 684. Thus, the ALJ's decision makes clear the reason for his determination not to adopt a limitation on plaintiff's postural activities. Accordingly, plaintiff's contention that the ALJ did not adequately explain his RFC determination fails in its entirety.

### E. Severity Determination on Plaintiff's Intellectual Level

Plaintiff was diagnosed with borderline intellectual functioning on 4 January 2001 by psychologist Edward English, M.A., based on his evaluation of her, including her scores on the Wechsler Adult Intelligence Scale—Third Edition. *Id.* 205. Specifically, plaintiff had a verbal scale IQ of 74, performance scale IQ of 77, and full scale IQ of 71, which are in the 4th, 4th, and 3rd percentile, respectively. *Id.* 204. English stated that he believed the scores were valid. *Id.* Addressing the testing done by English, the ALJ found that plaintiff does not have a severe

11

Case 4:09-cv-00071-D   Document 18   Filed 07/06/10   Page 11 of 18

impairment of her cognitive functioning. *Id.* 25 ¶ 2. Plaintiff contends that this determination was erroneous. The court disagrees.

An impairment is severe if it "significantly limits ... [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted). The court finds that substantial evidence supports the ALJ's determination that plaintiff's intellectual functioning level is not a severe impairment.

As the ALJ himself explained, the IQ scores "are not consistent with the claimant's education or social history." Tr. 25 ¶ 2. The ALJ then details the specific basis for this finding: plaintiff completed the 11th grade and was not in a special class; she has raised four children independently; she has been able to pursue her medical treatment and disability claim appeals; and the mental health care providers who treated her have not stated that she has any impairment in intellect. *Id.*

Plaintiff contends that the ALJ erred in basing his ruling, in part, on plaintiff's completion of the 11th grade. She argues that school records in the transcript show that she failed the ninth grade twice, the second time at age eighteen, and then dropped out of school. *Id.* 523-29. But there is no evidence establishing that these school records cover all her schooling through secondary school, as plaintiff assumes. Moreover, plaintiff testified at the hearing that she completed the 11th grade (*id.* 1004), as she did in a hearing in 2003 on a prior application (*id.* 1039). She also told psychologist English at the 2001 testing (*id.* 203) and another mental health professional in 2000 (*id.*

12

192) that she completed eleven grades. Thus, substantial evidence supports the ALJ's finding that plaintiff completed eleven years of school.

Other evidence also supports the ALJ's determination that plaintiff did not have a severe impairment of cognitive functioning. This evidence includes: her ability to perform semi-skilled work as a cook (found by the vocational expert to be semi-skilled as actually performed) and nurse assistant (*id.* 173, 1022); her obtaining certification as a nurse assistant (*id.* 1006, 1040); her use of a computer to play games and check email as part of her daily activities (*id.* 1018, 1020); the report of one treating mental health provider that she had average intellect (*id.* 383); and scores on annual CAT exams in her school records placing her above the 20th percentile and as high as the 42nd percentile in a total battery of reading, spelling, language, and mathematics (*id.* 526-27).

The court concludes that the ALJ acted lawfully in finding that plaintiff does not have a severe impairment of low intellectual functioning.[4] Plaintiff's challenge to the ALJ's decision on this ground therefore fails.

## F. Consideration of All Appropriate Listings

Plaintiff contends that the ALJ did not consider whether plaintiff's alleged deficiency in intellectual capacity met or equaled listing 12.05 for mental retardation and that his failure to do so is reversible error. Plaintiff's contention is without merit.

---

[4] Even if the ALJ had adopted psychologist English's opinion that plaintiff had borderline intellect, it would not necessarily have precluded plaintiff from doing the jobs the ALJ found her able to perform. English stated in his report that with borderline intellectual functioning plaintiff "should be able to perform routine and repetitive jobs unless physically she is not able to do so." *Id.* 205. The ALJ, of course, limited plaintiff to such work, albeit on different grounds. *Id.* 26 ¶ 4 ("She has a decreased ability to concentrate on and attend to work tasks to the extent that she perform only simple, routine, repetitive tasks.").

13

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet or equal a listing that fact alone establishes that the claimant is disabled. *Id.* § 416.920(d).

An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even if an impairment does not meet the criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

Here, it is true that the ALJ did not expressly address listing 12.05C in his decision. But he did find that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. In addition, after discussing findings relating to listing 12.03 (for schizophrenic, paranoid and other psychotic disorders), the ALJ states that plaintiff's "conditions are not manifested by other clinical findings indicating a level of severity comparable to the criteria of the relevant Listings and, therefore, her conditions can not be found to medically equal the criteria of the Listing of Impairments." *Id.* 26 ¶ 3. The ALJ thus represents that he considered comprehensively whether all of plaintiff's alleged impairments meet or equal any listings. These statements therefore indicate that

14

he did consider whether plaintiff's alleged intellectual impairment meets or equals listing 12.05C.

Moreover, the ALJ discussed several specific listings, including the one mentioned above, listing 12.03, that is in the same section, section 12.00, containing listing 12.05C. Tr. 25-26 ¶ 3. He also discussed certain requirements under the adult mental disorders listings in section 12.00 generally. These fact substantiate that the ALJ did, indeed, consider specific listings and that these listings included listing 12.05C.

In addition, the ALJ's express determination on the severity of plaintiff's alleged intellectual impairment also effectively decides that it does not meet or equal listing 12.05C. By the severity determination, the ALJ found that this alleged impairment does not significantly limit plaintiff's mental (or physical) ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). To meet or equal a listing, of course, an impairment must be at a much higher level of seriousness: it must be disabling. Thus, the determination that plaintiff's alleged deficiency in intellectual functioning is not a severe impairment indicates that it is not serious enough to meet or equal a listing on intellectual capacity such as 12.05C.

These various findings by the ALJ adequately indicate that he did not deem plaintiff's alleged impairment of intellectual functioning to meet or equal listing 12.05C. The court therefore does not believe that it was essential for the ALJ to address listing 12.05C specifically. In addition, the substantial evidence supporting the ALJ's severity determination also constitutes substantial evidence supporting the determination the ALJ clearly reached on non-satisfaction of listing 12.05C.

Further review of the record substantiates that plaintiff's alleged intellectual impairment does not meet or equal the requirements of listing 12.05C. To meet the requirements of listing 12.05, a claimant's impairment must first satisfy the introductory diagnostic description of mental

15

retardation in the listing. *See* Listing 12.00A. Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. The claimant must then satisfy the requirement of having a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05C.

Plaintiff does not have an IQ score in the prescribed range. Her lowest IQ was a full scale score of 71. Tr. 204. Her other scores were a verbal IQ of 74 and a performance IQ of 77. *Id.*

Plaintiff contends that her full scale IQ score of 71 meets the requirement of an IQ score of 70 because, according to psychologist English's report, the 95% confidence range for her full scale IQ score is between 68 and 76, thereby including several scores at or below 70. *Id.* 204. The listing, however, does not provide for adjustment of the ranges it specifies based on the purported margin of error. The court cannot permissibly read such a qualification into the regulation. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 124-26 (3d Cir. 2002) (reading an error range of five points into listing 12.05 would violate the plain language of the regulation); *Williams v. Apfel*, No. 99-039-SLR, 2000 WL 376390, at *12 (D. Del. 30 Mar. 2000) (noting that majority of courts refuse to lower scores to reflect margin of error) (citing, *e.g., Bennett v. Bowen*, No. 88-3166, 1989 WL 100665, at *3-4 (4th Cir. 28 Aug. 1989), 884 F.2d 1387 (table)).

Similarly, the ALJ's findings regarding the limited effect of plaintiff's alleged intellectual impairment on her capacity to perform basic work activities belies the notion that her alleged intellectual impairment is equivalent to listing 12.05C. *See Howard v. Massanari*, 255 F.3d 577, 582-83 (8th Cir. 2001) (rejecting equivalence argument and finding that substantial evidence

16

supports ALJ's finding that claimant was not mentally retarded under listing 12.05C where claimant's IQ of 71 fell outside the 60 through 70 range required by that listing); *Paschel v. Apfel*, No. 99C6206, 2000 WL 1468742, at *7 (N.D. Ill. 29 Sep. 2000) (same). Indeed, the requirements for listing 12.05C are such that an equivalence determination is rarely necessary. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Psychologist English himself did not find plaintiff to be mentally retarded, but rather to have borderline intellectual functioning. Tr. 205. His report also acknowledged that she had responded better to a psychiatric evaluation in 2000 than she did to him, including answering many questions that were more difficult. *Id.* For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's decision based on listing 12.05C.

## III. CONCLUSION

For the foregoing reasons, the court finds that the final decision by the Commissioner applied the correct legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and,

except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 2nd day of July 2010.

                                                                      _____
                                                                      James E. Gates
                                                                      United States Magistrate Judge